## FROST v. PINKERTON et al.

(Supreme Court, Appellate Division, First Department. June 7, 1901.)

ASSAULT—ACTION FOR DAMAGES—INSTRUCTION.

Plaintiff attended a race meeting of co-defendant club for the purpose of signaling information as to the races to the outside public. A rule of the club prohibited giving such information, the purpose being to prevent dealing in pools, which under Laws 1877, c. 178, was a misdemeanor. Defendant, a private detective, noticed the signaling, and in making an examination discovered the contrivance, whereupon plaintiff protested. Plaintiff contended that at defendant's command, and without provocation, he was dragged from his carriage and assaulted by defendant's men. Defendant claimed that plaintiff was not touched till he made a motion as if to draw a pistol, and was then arrested for a breach of the peace by a regular police officer, and contended that he acted in good faith, in the belief that plaintiff was committing a misdemeanor. The court instructed that the jury could award compensatory damages, and, if they found malice, could give punitive damages. Defendant asked an instruction that all the circumstances should be considered in determining whether there was malice on the part of the persons making the arrest, which instruction was refused. *Held* error, since there was evidence that defendant acted in good faith.

Appeal from trial term, New York county.

Action by Joseph W. Frost against Robert A. Pinkerton and another. From a judgment in favor of plaintiff, the defendants appeal. Reversed.

Argued before McLAUGHLIN, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Hugo Hirsh, for appellants.

John H. Hazelton, for respondent.

PER CURIAM. The judgment in this case must be reversed for an error of the court in refusing to give to the jury an instruction requested by counsel for the defendants relating to the question of damages. The action was brought to recover damages for an alleged assault made in connection with an alleged wrongful arrest and detention of the plaintiff. The occurrence took place on a race course belonging to the defendant the Brooklyn Jockey Club. The defendant Pinkerton was a private detective, employed by the club to preserve order and prevent violations of law on the race course, and had a body of men under his charge and direction. On the 25th of September, 1891, the plaintiff attended the races at the Jockey Club grounds, and went there in a carriage with his wife, son, and an elderly woman. The carriage was driven by a person in the livery of a coachman, but that person was in fact an electrician. The plaintiff was also a skilled electrician, and his purpose in attending the races was to communicate, by an electrical contrivance,

information of racing events to the outside world. There were rules and regulations of the Jockey Club which prohibited, in effect, the transmission of information to the outside public of what was taking place on the race course. The purpose of this regulation was to prevent what was called dealing in pools, a species of gaming and betting on racing then in vogue. There was a statute in force at that time (chapter 178, Laws 1877) which made dealing of the character referred to a misdemeanor. The plaintiff on the day in question had an apparatus arranged in his carriage, consisting of an electric battery on the floor of the carriage, which communicated by wires with a bulb in the hat of the driver. There was a·slit or opening in the hat through which flashes of electricity could be emitted, and which were, in effect, telegraphic signals to an operator in a tower of the Western Union Telegraph Company outside of the Jockey Club grounds. The plaintiff was under contract to furnish the Western Union Telegraph Company with information in this clandestine fashion. His acts were a violation of the rules of the Jockey Club, but did not come within the terms of the statute relating to pool selling, so as to make them a misdemeanor. The defendant Pinkerton, observing flashes of electricity coming from the hat of the driver of the plaintiff's carriage, went with some of his men, examined the hat and discovered the bulb. The plaintiff protested against Pinkerton's conduct. It was claimed by the plaintiff that without provocation, and without intimation or warning, and at the command of Pinkerton, he was seized, dragged from the carriage, manacled, brutally assaulted, and beaten by some of Pinkerton's men. He was sustained in his version by those who were in the carriage with him. On the other hand, Pinkerton and several of his force of men testified, in effect, that the person of the plaintiff was not touched, nor was he molested in any way, until he made motions as if to draw a pistol, and that then he was taken into custody for a breach of the peace; not taken by Pinkerton's men, but by an officer of the police force of the town of Gravesend, in which town the race course was situated. Pinkerton and his force were private citizens. The plaintiff was not engaged in the commission of a misdemeanor, but, at most, only of a violation of a rule or regulation of the race course. There was no right, therefore, to arrest the plaintiff, but the defendant Pinkerton insisted upon the trial that he was acting in good faith, in the belief that a misdemeanor was being committed, and that neither he nor his men committed a trespass upon the person of the plaintiff, and that the arrest was only caused when it became evident that the plaintiff was about to commit a breach of the peace. The case was tried, and went to the jury almost exclusively upon the issue of fact as to there being an unprovoked and inexcusable assault and battery on the plaintiff; the subject of false imprisonment being treated as secondary matter.

The trial judge plainly instructed the jury that they were to determine what was the true nature of the transaction; whether the plaintiff was assaulted or arrested in the manner he said he was, or whether he was arrested by a police officer while committing a

breach of the peace. He then instructed the jury that the question of damages was one for them, and, if they came to the conclusion to find a verdict for the plaintiff, they would give such a sum as they thought would compensate him for the injury he received, and added, "You cannot give him any more than a sum which will compensate him." At the conclusion of the judge's charge, the counsel for the plaintiff said, "I ask your honor to charge that we are entitled to punitive damages;" whereupon the court instructed the jury as follows: "If you think the assault was a malicious assault, you may award a sum as punishment for the assault." From the amount of the verdict rendered in this case, it is evident that damages were awarded as punishment, for they are grossly excessive as an award for compensation merely. In that state of the case, the defendant asked the court, among other things, to charge the jury as follows: "All the circumstances of the transaction are to be considered by the jury in determining whether there was the presence or absence of malice on the part of the persons making the arrest." The court refused to give that instruction.

Under the circumstances of this case, and the manner in which it was tried and went to the jury, it was error to refuse this request. Notwithstanding the fact that on the whole case the plaintiff was entitled to damages for compensation, there was evidence tending to show that Pinkerton and his men believed that the plaintiff was violating the law as well as a regulation of the Jockey Club. In considering the subject of the allowance of punitive damage, the element of good faith on the part of the defendant must be considered. If the wrong complained of were malicious, and in entire disregard of the plaintiff's rights, punitive damages might be awarded, but a jury must consider all of the circumstances surrounding the occurrence out of which the cause of action arises. Under the instruction as first given, the jury could find none other than compensatory damages. Then they were instructed that, if they found malice in the assault, they could give punitive damages. They might well have been led to believe that they need look no further than to the mere fact of the assault, and hence might disregard all the circumstances surrounding the transaction, which, as before remarked, should have been considered upon the question of good faith of Pinkerton, notwithstanding his mistake concerning the commission of a misdemeanor by the plaintiff.

For this reason, we think the judgment and order should be reversed, and a new trial ordered, with costs to appellants to abide the event.